Good morning and may it please the court. This case presents two critical issues. First, whether the immigration judge properly determined that Mr. Mohamed Kouyate's conviction qualifies as a fraud-based aggravated felony and specifically the loss amount and how that was calculated. And second, whether Mr. Kouyate is more likely than not to face torture if forcibly returned to Guinea based on sources of torture that were not properly aggregated by the agency in this case. Specifically, the political notoriety of a son of a former Prime Minister and the documented country conditions contained in the and offered by Mr. Kouyate that show that family members of political actors are often used as leveraging tools to exact revenge and also to obtain political retribution by other means. He produced no evidence that he himself had ever been threatened. That is correct, but in this case the fact that his father was the leader of the country, was a diplomat, also the head of the United Nations Syndicate for the African Union, and also founded a political party finished fourth in the 2008 presidential election, receiving over a million votes in a country that has over 13 million people, the fact that he is the only son whose name is strikingly similar to somebody who led a country of 13 million people should in and of itself... Hasn't we been instructed by the Supreme Court that the standard of review of these cat claims, and I'm taking the language out of the Supreme Court, is highly deferential? Yes, Your Honor, that is correct. It is highly... Not just deferential, but highly deferential. Yes, but as Justice Kennedy said in his final immigration opinion, reflexive deference is not the type of deference that any circuit court should engage in when evaluating an agency. It seemed to me you were talking more about general conditions in Guinea than you were about any particularized injury. Well, there were particularized injuries to his father while he was in Guinea, both before and after his tenure as prime minister. That should in and of itself... And how long ago was that? Over a decade. But the attenuation of time... Our precedent says that the lapse of time is a relevant factor. Of course, it is a relevant factor. And that's a while back. Indeed. However, as I invited the court to engage in a hypothetical I posed in my opening brief, the family members of our former leaders all the way back to Chelsea Clinton are going to be recognized to some extent and can be used for political means. Additionally, we all know it's well settled, right, that the family, the nuclear family is the prototypical social group. Well, that's because of... I want to come back to our precedent here because the Ortez-Cruz case said that this court has repeatedly recognized that the passage of time is appropriate to consider when determining whether an applicant is satisfied with the burden of proving the likelihood of future torture. And here that is a good bit of time that has passed since this gentleman's father was active in Guinea politics. That is correct, Your Honor. So how do we, given the relevance of that factor under our precedent, how do we overturn the BIA when the standard is supposed to be a highly deferential one? Because this person is a historical figure in his country. Children might learn about him in school. The notoriety of his father is enough to overcome the temporal attenuation and how that causes the court to pause. But is there anything specific that you have to go on? In what respect? It's all speculative. Not with respect to what has happened in the past. There's country conditions evidence that directly implicates the father. Pictures of him being attacked in the streets during protests and also his actions on behalf of the political party that he founded. You have to prove it's more likely than not that he would be subjected to torture. But the BIA was saying here that you've got to come back with something specific that was directed against either the father or the son. We've never permitted general arguments to carry the day. We have required some sort of particularized showing. And given the length of time and the rest, that seems to me difficult when the Supreme Court has told us that our review of the BIA on cat claims, not talking about asylum, I'm talking about cat claims, is supposed to be highly deferential. Certainly, Your Honor. And I'm not seeking to diminish the highly deferential review that this court must engage in. I'm simply asserting that the unique circumstances of this case, the political instability, the military coup in 2021, the documented country conditions evidence from the state... Sounds like you're willing to... you want us to look at it de novo, disagree. You presented all this stuff to the IJ and the BIA and they didn't accept it as enough. It wasn't enough evidence. And you want us to look at it, take a fresh look at the whole thing rather than defer. Mr. Quixote was pro se throughout his... Rather than highly defer. I'm simply arguing that the sources were not properly aggregated. The analysis is flawed. Not that the conclusion is not supported by substantial evidence. The fact of the matter is, is that all sources, and in this case, the motivations, which is not generally something that you see in a cat claim or something that is properly weighed or even relevant in a cat claim. But here, because of the notoriety of the individual in question, you have... Counsel, excuse me. I apologize, Your Honor. You have here an information that indicates this individual has, on his record, 14 car thefts. Is that correct? The offense related to improper or fraudulent credit applications to obtain a vehicle... There are 14 car thefts. Yes, Your Honor. Even given the fact that I'm not sure that Congress would have wanted someone to be ruled non-removable after 14 convictions for car thefts, I'm still willing and obliged to take the merits of your cat claims seriously. But as my colleague has pointed out, we are not the ones taking the initial look at this. We have not heard the evidence. The court, the BIA below, and the IJ have a far more detailed understanding of it than we do. We are an appellate tribunal. And we, as my colleague points out, we can't just saunter in and take a de novo look at this whole proceeding. And, you know, the BIA did not run off the rails as a matter of law. They took into account the passage of time about the events that you were complaining. And our precedent says that's perfectly fine to do. And our precedent says further that general conditions won't cut it. That there's got to be some sort of particularized showing that this individual, because of his father, would be likely subjected to torture upon his return. And it's a factual question. And the BIA said no. And so where do we get the authority to just do all this first instance, look at these cases? Yes, your honor. He is part of a pattern of similarly situated individuals that the State Department has concluded. And in the most recent country report that there are family members of former political leaders are often sought after for ransom or revenge or for political gain. That places him in a particularized vulnerability that is not common in a typical civil strife situation. Additionally, the fact that... And you presented all that to the immigration judge, to the IJ. Yes, your honor. And you presented it to the BIA. Yes, but... And they both rejected it as insufficient. While also erroneously framing, though, the visit of the mother as they viewed as highly dispositive, as something that showed that he wouldn't face any threat, when in fact he was born out of an affair with his father and his mother, which is why there was no interest in his mother, because she was never the first lady, so to speak. But turning to my second major point, that Mr. Quixote was pro se before the board as well as before the immigration judge. And this court needs to consider how Quinteros, this court's opinion, in which an immigration judge has an affirmative duty to help develop the record with respect to the labyrinth of complexity of a protected ground in Quinteros. But here you have the aggravated felony determination, specifically the loss threshold, that was never properly underscored, highlighted, or even stated or framed for him to go into... Immigration judge has an affirmative duty to rule in your favor. No, your honor. I'm saying... That's what I've been hearing. That complex legal issues that a layman has no ability to become informed on. Just like Judge Dennis in the Fifth Circuit said, after WYCHOB, which I would submit, catalyzed this entire inquiry as to the immigration judge's duty to play an active role in not only fact finding and developing the record, but also advising, or at least pointing in the right direction, how a pro se respondent can colorfully and artfully, to the best of their layman ability, defend themselves against deportation. And when you have the... What was he supposed to do here? You've got all this essentially uncontested evidence about all these financial crimes. I'm somewhat of a loss as to what sort of mentoring he's supposed to do. I would point to the Second Circuit's decision of... Tell us what he was supposed to have done in this case. The immigration judge? Yes, under your theory. Yes, I would submit that at least identification of the circuit split, or the complexity of the loss threshold... Split on what? The loss threshold and what is appropriate to rely on with respect to the actual loss and how restitution exclusively is not appropriate, as well as the statute's language, which is what the transcript reflects the immigration judge... How does he do that without in effect stepping down from the bench and becoming the alien's lawyer? To engage the respondent in the discussion instead of exclusively discussing it with the DHS trial attorney and saying, oh, we have this statute that requires $100,000 under Maryland, and we also have this restitution amount, so of course the loss threshold is satisfied. When you have other courts that have said, well, restitution, we need to see how that is calculated. We need to see if actual loss is what arises to $10,000. Because restitution under common law includes compensation, reparations, loss of value, and making the individual whole. So it is a broader concept than loss and involves many other remedial measures than simply trying to remedy the loss amount. If there ever were a situation where somebody was convicted of an aggravated felony, which as we know is a deportable grant, this would appear to be it. Because the federal limit on the aggravated felony, as you well recognize, is $10,000. And this individual was sentenced under Maryland law to 15 years. And that under Maryland law had to be over the $10,000 federal limit, which is the limit for an aggravated felony. I mean, he had a 15-year sentence, which under Maryland law reaches the aggravated felony threshold. And then when you add the restitution to it, I would say this individual probably $50,000, $100,000, I don't know what, but it's way, way over what's necessary for an aggravated felony. Yes, Your Honor. I see my time has expired. May I respond to your question? Yes, sure. Thank you, Your Honor. You are correct that this statute suggests that the loss threshold has been met. But in this case, the record demonstrates we do not know which victim lost $10,000. We simply know that in the aggregate there was this restitution amount applying to all victims. The Supreme Court in Newon demands more. But he could not have been sentenced to 15 years under Maryland law unless the amount that defrauded was over $10,000. There would be an impossibility. In Maryland, procedural evidence such as jury instruction should have been provided by the government so as to support that conclusion, instead of it just simply being inferred with a pro se respondent. The analysis in this case was... Where's your client right now? He is detained. Pardon?  He's in custody? Yes, Your Honor. Of the Maryland authorities? The Maryland prison? No, Your Honor. He's under the custody of the Department of Homeland Security. He's under custody of the United States. What happened to his 15-year sentence? He served it. He served it all? Correct. If I have no further questions at this time, I do have some rebuttal time. But thank you. And... Yep. Ms. Farrell? Good morning, Your Honors, and may it please the Court. Cori Farrell on behalf of the Attorney General. In this case, it was Petitioner's burden to establish his eligibility for relief and protection from removal. This includes showing that he was not convicted of a disqualifying offense, and demonstrating his eligibility for deferral of removal under the Convention Against Torture. The immigration judge here correctly found Petitioner ineligible for asylum and withholding of removal because he was convicted of a particularly serious crime. And Petitioner did not challenge this determination before the Board. Moreover, the record in this case does not compel the conclusion that every other reasonable fact-finder would have granted Petitioner's request for deferral of removal. Petitioner's speculation that upon his return to Guinea, he would be linked to his father and tortured as a result by or with the acquiescence of the government is unsupported by corroborating evidence and insufficient to satisfy his heavy burden of proof. And as Your Honor, Judge Wilkinson noted, we have lots of general evidence in this case about country conditions in Guinea. But what we are lacking here is evidence to show that Petitioner himself would face a particularized risk of torture. Yes, his father was a political figure in Guinea. There is no dispute about that, and the agency considered that fact and recognized that he was the former Prime Minister. But none of the evidence shows that anyone in Guinea is interested in harming Petitioner at this time due to his father or any other reason. The immigration judge did exactly what is required of a fact-finder here. He considered the testimony of Petitioner, and Petitioner called two witnesses here to testify on his behalf. Petitioner submitted evidence in support of his claims. The immigration judge developed the record through questioning, and so the agency considered all of the evidence presented. The agency recognized that it needed to consider the possible sources of torture in the aggregate, and the agency considered all of that, and concluded reasonably that Petitioner did not meet his heavy burden of establishing his eligibility for deferral. Mr. Russo says that the immigration judge needed to do a lot more. What's your response to that argument? The record here shows that the immigration judge did what was required and fully developed the record. I would also note that this issue was never raised before the board, or I don't believe, before this court until the reply brief, and so that issue was not exhausted about the immigration judge's duty to develop the record. But nonetheless, I will say if you review the record in its entirety, it shows that the immigration judge did what was required. He advised Petitioner on his ability to present witnesses, to testify on his behalf, to submit evidence. He accepted the evidence, and he fully considered it. That particular argument, I assume you would say, is simply waived. Well, first I would say it was unexhausted because it was not raised before the board, and also waived, Your Honor. Correct. So I believe on the Catt claim that the record simply does not compel reversal of the agency's decision in this case. I also would like to turn to the particularly serious crime issue. The government's position is that issue was also unexhausted before the board because Petitioner did not challenge the immigration judge's determination that his conviction constituted a particularly serious crime, and he's raising very precise arguments now before the court which were never presented to the board, and the board explicitly found that he waived that issue. All right. At this point, I'm going to ask my colleagues if they have some questions. Judge King, do you have any questions? We have no questions. Thank you. Thank you, Your Honors. Mr. Brousseau? Following WYCHOB, this court, as well as other courts, have noted that the immigration judge's duty in a pro se matter is heightened compared to other cases, and here you do not have the immigration judge arising to that duty. Well, that indicates that that was an argument never raised until your reply brief. Is that correct? No, Your Honor. That is in your brief. Yes. The immigration judge had a duty to at least, at the bare minimum, point the pro se respondent to a case or afford him an opportunity to spend some time at the law library if there must be at least some articulation or advisal as to what constitutes a viable or cognizable particular social group. Shouldn't we, in a more complex inquiry, in the, quote, crimmigration side of this practice area, which, of course, under Padilla, Kentucky, was noted by the Supreme Court as only being in diminished complexity to tax law, and if you have an individual who is attempting to fight off removal himself and cannot even respond to the evidence being presented against him with respect to lost thresholds or even that the lost threshold is a determinative question, he won't stand a chance, just like Judge Dennis noted in his concurring opinion in Canterbury Lagos, that if pro se respondents were left to their own devices to construct social groups, none of them would prevail. And if you have a crimmigration issue, in this case an aggravated felony that creates a per se particularly serious crime, barring them from asylum, barring them from withholding removal under the Act and withholding under the Convention Against Torture, leaving only deferral and the pro se respondent has no idea as to why and then ambiguously in his handwritten brief says, I disagree that my criminal history should bar me from seeking this type of relief, and then for the Board to respond to that with respect to withholding under CAT, that opens the door for this Court to consider that argument. And that is what I submitted in my brief, and I do believe that the issue was not waived. The Ninth Circuit in Henrique Rivas said that however inartfully pleaded that there should be some additional liberality afforded to a pro se respondent when dealing with issue preservation and the You would have that liberality or whatever you call it, mean that the IJ needs to act as the counsel to the petitioner. No, Your Honor, I'm simply Represent him and do his case for him. I'm advocating He's still the IJ, that means immigration judge. Yes, Your Honor, I see my time has expired. But I ask that this Court remand this case for proper determination of the likelihood of torture due to the notoriety and the political position of the respondent in this case and also find that the immigration judge failed to advise in any respect the dispositive issue with respect to barring him from relief from asylum as well as withholding of removal under the act due to an aggravated felony determination and specifically the loss threshold question in this case. I thank the Court for its consideration. And with that, I conclude my argument.
judges: J. Harvie Wilkinson III, Robert B. King, G. Steven Agee